UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIGUEL TELLEZ-VASQUEZ,<br><br>                    Petitioner,<br><br>v.<br><br>JOHANNA SMITH, Warden,<br><br>                    Respondent. | Case No. 1:10-cv-00406-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Petitioner Miguel Tellez-Vasquez, an Idaho state prisoner, is proceeding pro se in this habeas corpus matter. Petitioner has raised four claims: (1) ineffective assistance of direct appeal counsel; (2) actual innocence; (3) excessive sentence; and (4) trial court error in not granting Petitioner's motion to reduce his sentence. (Dkt. 3, 19; *see also* Dkt. 50 at 5.) This case was reopened following a remand from the United States Court of Appeals for the Ninth Circuit. (Dkt. 69, 70.)

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 25.) The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on December 20, 2010, and September 6, 2011. (Dkt. 14, 35.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the

**MEMORANDUM DECISION AND ORDER  1**

parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order dismissing the Petition with prejudice.

## BACKGROUND

In 2004, after a jury trial in state court, Petitioner was convicted of two counts of trafficking a controlled substance (methamphetamine), one count of delivery of a controlled substance (methamphetamine), and three counts of failure to obtain a tax stamp. (State's Lodging A-1 at 103-07.) Petitioner's sentences for all six counts were ordered to be served concurrently, resulting in a term of 5 to 25 years in prison. (State's Lodging A-1 at 117-26.) On direct appeal, Petitioner's appellate counsel raised a single claim challenging Petitioner's sentences, and the Idaho Court of Appeals affirmed. (State's Lodging B-1.) The Idaho Supreme Court denied Petitioner's petition for review. (State's Lodging B-7.)

Petitioner next filed an application for post-conviction relief in state district court, raising a number of claims, including claims of ineffective assistance of trial counsel. (State's Lodging C-1 at 29.) The district court dismissed the application, but Petitioner apparently did not receive notice of the court's order for several months, and his appeal later was dismissed as untimely. (State's Lodging E-1 at 18-19.) An agreement was reached by the parties that resulted in the state district court re-filing the order dismissing the application so that Petitioner could submit a timely notice of appeal from the order.

(State's Lodging E-1 at 12-15.) On appeal, the Idaho Court of Appeals affirmed the lower court's decision, and Petitioner's petition for review was denied by the Idaho Supreme Court. (State's Lodgings F-8, F-9.)

Before the post-conviction appeal had concluded, Petitioner submitted a federal habeas petition, alleging that he was deprived of his Fourteenth Amendment right to the effective assistance of counsel during the direct appeal (Claim 1) and that he is innocent (Claim 2). (Dkt. 3 at 8-17.) The Court conducted an initial review of the Petition and ordered the Petition to be served on the Respondent. (Dkt. 7.) Petitioner thereafter supplemented his Petition to add two new claims: excessive sentence (Claim 3) and the erroneous denial of his motion to reduce his sentence under Idaho Criminal Rule 35 (Claim 4). (Dkt. 19.)

Respondent initially requested that the Petition be dismissed without prejudice, because Petitioner had not yet presented any habeas claims to the Idaho Supreme Court. (Dkt. 12.) Before the Court ruled on that request, the Idaho Supreme Court issued its remittitur ending the post-conviction appeal, and this Court later dismissed Respondent's motion as moot. (Dkt. 30, p.1.) Respondent then filed a motion for summary dismissal.

On September 17, 2012, the Court conditionally granted Respondent's motion for summary dismissal because Claim 2 was not cognizable as a freestanding claim and because Claims 1, 3, and 4 were procedurally defaulted. (Dkt. 50 at 5-6.) The Court also concluded that Petitioner had failed to establish cause and prejudice or actual innocence

to excuse the procedural default of Claims 3 and 4, but that—with respect to Claim 1—Petitioner might be able to benefit from the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), which held that inadequate assistance of postconviction review ("PCR") counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance *at trial*." (*See also* Dkt. 50 at 9-10 (emphasis added).) The Court gave the parties an opportunity to argue whether *Martinez* could be extended to excuse the procedural default of Claim 1: Petitioner's claim of ineffective assistance of *direct appeal* counsel.

The Court reviewed the parties' briefing and, on August 7, 2013, determined that *Martinez* was limited to underlying claims of ineffective assistance of trial counsel and therefore did not apply to Petitioner's claim of ineffective assistance of direct appeal counsel. (Dkt. 62 at 9-10.) The Court dismissed the Petition in its entirety.

Following that dismissal, the Ninth Circuit issued its decision in *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013), which held for the first time that *Martinez* does indeed apply to underlying claims of ineffective assistance of direct appeal counsel. After Petitioner's appeal was remanded from the Ninth Circuit, this Court vacated its dismissal order and judgment and allowed the parties to submit briefing on whether the procedural default of Claim 1 should be excused under *Martinez*. (Dkt. 70.) The parties have done so, and the Court has reviewed all of the parties' submissions in this case.

**MEMORANDUM DECISION AND ORDER  4**

# DISCUSSION

**1.**     **Standard of Law**

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). A procedurally defaulted claim may be heard on the merits if a petitioner establishes cause and prejudice to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488.

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during the postconviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to this general rule—an exception that applies only to Sixth Amendment ineffective assistance of counsel ("IAC") claims. *Martinez* held that inadequate assistance of PCR counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a

prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. As

explained above, the Ninth Circuit has extended *Martinez*, holding that it can also apply

to procedurally defaulted claims of ineffective assistance of direct appeal counsel.

*Nguyen*, 736 F.3d at 1293.

In *Trevino v. Thaler*, the Supreme Court described the *Martinez* analysis as

consisting of four prongs:

> We consequently read *Coleman* as containing an
> exception, allowing a federal habeas court to find "cause,"
> thereby excusing a defendant's procedural default, where (1)
> the claim of "ineffective assistance of trial counsel" was a
> "substantial" claim; (2) the "cause" consisted of there being
> "no counsel" or only "ineffective" counsel during the state
> collateral review proceeding; (3) the state collateral review
> proceeding was the "initial" review proceeding in respect to
> the "ineffective-assistance-of-trial-counsel claim"; and (4)
> state law requires that an "ineffective assistance of trial
> counsel [claim] . . . be raised in an initial-review collateral
> proceeding."

133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21)

(alterations in original).

The third and fourth prongs of the analysis are rarely in dispute. With respect to

the third prong, the *Martinez* exception applies only to the lack of counsel or

ineffectiveness of counsel in the *initial* postconviction review proceeding. It "does not

extend to attorney errors in any proceeding beyond the first occasion the State allows a

prisoner to raise a claim of ineffective assistance." *Martinez*, 132 S. Ct. at 1320. Rather,

the Court in *Martinez* was singularly concerned that, if ineffective assistance of trial

counsel claims were not brought in the collateral proceeding which provided the first occasion to raise such claims, the effect was that the claims could not be brought *at all. Id.* at 1316. Therefore, a petitioner may not assert as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, [or] petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

With respect to the fourth prong—that state law must require IAC claims to be brought in an initial-review collateral proceeding—the Supreme Court in *Trevino* extended *Martinez* to apply not only where a state *requires* IAC claims to be raised in postconviction proceedings, but also where a state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. Therefore, *Martinez* applies in Idaho where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992) (recognizing that in Idaho the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," though in limited instances such claims may be brought on direct appeal "on purported errors that arose during the trial, as shown on the record").

The two strongly disputed issues in a *Martinez* inquiry are generally the first

prong, whether an underlying IAC claim is substantial, and the second prong, whether

PCR counsel rendered ineffective assistance by failing to raise that IAC claim in state

postconviction proceedings.

A.  ***Prong One: Substantiality of Underlying IAC Claims***

For the *Martinez* exception to apply, a petitioner must bring forward facts

demonstrating that his underlying IAC claim is substantial. The United States Supreme

Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at

1318 (comparing the standard for certificates of appealability from *Miller-El v. Cockrell*,

537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any

merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal district court to

examine the claim under *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner

asserting ineffective assistance of counsel must show that (1) "counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a

trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the

"reasonableness" of counsel's actions must not rely on hindsight:

**MEMORANDUM DECISION AND ORDER  8**

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or what evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a particular theory or issue in the case is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate

**MEMORANDUM DECISION AND ORDER 9**

must be directly assessed for reasonableness in all the
circumstances, applying a heavy measure of deference to
counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step in the

*Strickland* inquiry is the prejudice analysis. "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the

error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a

petitioner "must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As the *Strickland* Court instructed:

In making this determination, a court hearing an
ineffectiveness claim must consider the totality of the
evidence before the judge or jury. Some of the factual
findings will have been unaffected by the errors, and factual
findings that were affected will have been affected in
different ways. Some errors will have had a pervasive effect
on the inferences to be drawn from the evidence, altering the
entire evidentiary picture, and some will have had an isolated,
trivial effect. Moreover, a verdict or conclusion only weakly
supported by the record is more likely to have been affected
by errors than one with overwhelming record support. Taking
the unaffected findings as a given, and taking due account of
the effect of the errors on the remaining findings, a court
making the prejudice inquiry must ask if the defendant has
met the burden of showing that the decision reached would
reasonably likely have been different absent the errors.

*Id.* at 695-96.

These principles from *Strickland* apply equally to claims of ineffective assistance

**MEMORANDUM DECISION AND ORDER  10**

of trial or direct appeal counsel. Effective legal assistance does *not* mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "Nothing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id*. at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

To show prejudice with respect to direct appeal counsel, a petitioner must show that his appellate attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission probably would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *Id.* at 1435.

These standards from *Strickland* for determining deficient performance and prejudice are, of course, the standards for an eventual review of the merits of the underlying IAC claim. The question whether an IAC claim is substantial under *Martinez* is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should

issue. *See Martinez*, 132 S. Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, to determine whether a claim is substantial, *Martinez* requires the district court to *review* but not *determine* whether trial or appellate counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and the issues are deserving enough to encourage further pursuit of them.

### B.     *Prong Two: Lack of PCR Counsel or Ineffective Assistance of PCR Counsel*

In addition to showing that the underlying IAC claim is substantial, a petitioner seeking to invoke *Martinez* must also show either that he had no counsel on initial postconviction review, or that his PCR counsel was "ineffective under the standards of *Strickland*." 132 S. Ct. at 1318; *see Trevino*, 133 S. Ct. at 1918. "Ineffectiveness" is a term defined by *Strickland* as (1) deficient performance and (2) a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to PCR counsel's performance, not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards,"

**MEMORANDUM DECISION AND ORDER  12**

the PCR attorney's performance does not constitute "cause." *Martinez*, 132 S. Ct. at 1319.

The *Strickland* standards for analyzing deficient performance set forth above apply with

equal force to PCR counsel in the context of a *Martinez* argument. Importantly, PCR

counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim."

*Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

If PCR counsel's performance is deficient, then the court must consider whether

that performance was prejudicial under *Strickland*. *See Clabourne v. Ryan*, 745 F.3d 362,

377 (9th Cir. 2014). Therefore, even if a petitioner shows that his IAC claims are

substantial under the first *Martinez* prong, he must still show that postconviction counsel

rendered deficient performance and that, "but for post-conviction counsel's failure to

raise [the substantial IAC] claims, there is a reasonable probability that the result of the

post-conviction proceeding would have been different" under the second *Martinez* prong.

*Id.* at 378. These two inquiries will, at times, collapse into one. *Id.* at 382 ("Under the

circumstances of this case, if [the petitioner] succeeds in demonstrating that he was

prejudiced by the failure of his post-conviction counsel, he will necessarily have

established that there is at least 'some merit' to his claim that he suffered ineffective

assistance of trial counsel . . . .").

The Court may address either inquiry first, and the resolution of one prong may

obviate the need to address the other. *See Martinez*, 132 S. Ct. at 1319 ("When faced with

the question whether there is cause for an apparent default, a State may answer that the

ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

**2.    Claims Subject to a *Martinez* Analysis**

In Petitioner's post-remand briefing, he argues that several claims are subject to a *Martinez* analysis. Those claims include the following:

1)    Ineffective Assistance of Trial Counsel:

    a)    Trial Counsel had a conflict of interest as he was also representing the co-defendant at critical stages of the proceedings.

    b)    Trial Counsel failed to challenge the chain of custody of the evidence.

    c)    Trial Counsel failed to challenge the sufficiency of the evidence.

2)    Ineffective Assistance of Counsel during the direct appeal process for the following reasons:

    a)    Appellate Counsel was ineffective for not raising any issues on appeal except for the issue of the sentence being excessive, which issue is known in Idaho as a "dead-bang" loser.

    b)    Appellate Counsel refused to raise any claims related to Ineffective Assistance of Trial Counsel.

    c)    Appellate Counsel refused to, or did not obtain pertinent portions of the report of the proceedings from the jury trial. In

other words, Counsel filed an appellate brief without a complete copy of all trial transcripts.

d)    Appellate Counsel was ineffective for not bringing forward the evidence of misconduct at the Idaho State Police crime lab during the time in question. (When this case's evidence was in the control of that lab.)

e)    Appellate Counsel was ineffective for not knowing that [trial counsel] represented two different co-defendants in the same trial and that one of these co-defendants was giving, or had given, evidence against the other. . . . The issue is that Appellate Counsel did not bring this issue forward on appeal. (That Trial Counsel had a conflict of interest).

(Dkt. 72 at 3-4.)[1]

However, Petitioner has not made any independent claims of ineffective assistance of trial counsel in his federal habeas Petition. Nor does the Petition include some of the sub-claims listed above with respect to Petitioner's direct appeal counsel. (*See* Dkt. 3, 19.) Therefore, the Court will address only the ineffective assistance of direct appeal counsel claims that Petitioner has actually raised in the Petition and argued (either directly

---

[1] Though Petitioner also appears to describe his arguments with respect to ineffective assistance of postconviction counsel as independent constitutional claims (Dkt. 72 at 4), the Court interprets these "claims" as proffered support for Petitioner's contention that his underlying IAC claims should be heard on the merits because his PCR counsel was ineffective. *See Martinez*, 132 S. Ct. at 1317-20 (leaving undisturbed the principle that there is no constitutional right to counsel during postconviction review proceedings).

or indirectly) in his post-remand *Martinez* brief.

**3.** **Petitioner's Claims of Ineffective Assistance of Direct Appeal Counsel Are Not Substantial, and PCR Counsel's Failure to Raise Those Claims Did Not Constitute Ineffective Assistance under *Strickland* and *Martinez***

The Petition raises several sub-claims asserting that direct appeal counsel rendered ineffective assistance based on the following:

A) Direct appeal counsel did not obtain and review certain trial records—such as transcripts, proposed and actual jury instructions, verdict forms, and motions made by trial counsel—nor did direct appeal counsel provide Petitioner with Spanish translations of the record or communicate with Petitioner in Spanish. (Dkt. 3 at 9-10; Dkt. 72 at 6.)

B) Direct appeal counsel did not argue on appeal that the testimony of a confidential informant was inconsistent with previous testimony at the preliminary hearing and was based on hearsay. (Dkt. 3 at 11-13.)

C) On appeal, direct appeal counsel did not raise as an issue trial counsel's failure to object to an alleged problem with the chain of custody of evidence. (Dkt. 3 at 13-14; Dkt. 72 at 9.)[2]

D) Direct appeal counsel did not challenge the sufficiency of the evidence used to prove Petitioner guilty beyond a reasonable doubt. (Dkt. 3 at 14-15.)

E) Direct Appeal counsel did not challenge the racial composition of the jury. (Dkt. 3 at 15-16.)

(*See* Dkt. 3, 72.)

For the reasons that follow, the Court concludes Petitioner has not shown that he has a substantial claim of ineffective assistance of direct appeal counsel.

_____

[2] Though Petitioner has not asserted any independent constitutional violations based on trial counsel's failure to challenge the chain of custody, this issue will be addressed in the context of Petitioner's argument that direct appeal counsel should have raised a claim of ineffective assistance of trial counsel.

**A.      Sub-Claim 1(A): Failure of Direct Appeal Counsel to Obtain and Review Trial Records, Failure to Provide Spanish Translations of Trial Records, and Failure to Communicate with Petitioner in Spanish**

Petitioner first argues that appellate counsel did not obtain a complete copy of the trial record and that, had counsel obtained the records, Petitioner would have been able to assert additional issues on appeal. Other than the alleged trial errors described by Petitioner in Sub-Claims 1(B) through (E) for purposes of his IAC claims, however, Petitioner does not specifically identify any such errors. Thus, the Court cannot conclude that appellate counsel's alleged failure to obtain records, without more, prejudiced Petitioner. Similarly, Petitioner has not established that counsel's alleged failure to communicate with Plaintiff in Spanish or to provide Spanish translations of the trial records caused him any prejudice under the second *Strickland* prong.

The Court will address in the following sections each of the specific issues that Petitioner contends should have been raised on appeal.

**B.      Sub-Claim 1(B): Failure of Direct Appeal Counsel to Challenge the Confidential Informant's Testimony as Inconsistent and as Hearsay**

One of the witnesses at Petitioner's trial was a confidential informant named Felipe Rojas, who made several controlled buys of methamphetamine from Petitioner, using a middle man named Alejandro Flores. At the preliminary hearing, Rojas testified that, during the buys, he did not actually see Petitioner hand over the drugs to Flores because Flores was blocking Rojas's view of Petitioner's hands. (State's Lodging A-2 at 90.) However, at trial Rojas testified that he *did* see the exchange of drugs. (State's

**MEMORANDUM DECISION AND ORDER  17**

Lodging A-3 at 54-55, 75.) When the prosecutor brought out the discrepancy on direct examination, Rojas stated that his testimony at trial—that he actually saw the drugs exchange hands—was "more correct" because Rojas felt "more calmly, more prepared" at trial, while at the preliminary hearing he felt nervous. (*Id*. at 75.)

On cross-examination, Petitioner's trial counsel focused heavily on the inconsistency between Rojas's testimony at the preliminary hearing and at trial. (*Id*. at 163-76.) At one point during cross-examination, Rojas went back to his original story and stated, "No, I never saw [Petitioner] with the drugs in his hands." (*Id*. at 176.)

Petitioner claims that appellate counsel should have challenged Rojas's testimony on appeal as inconsistent with prior testimony and as hearsay, though Petitioner does not identify which of Rojas's statements at trial constitutes hearsay. The Court concludes that there is no merit to Petitioner's argument that direct appeal counsel performed deficiently by failing to raise these issues on appeal. Trial counsel fully explored the inconsistency in Rojas's testimony, and the jury thus was well aware that Rojas's version of the events had not always been the same. It is the province of the jury to judge a witness's credibility and to resolve inconsistencies in the testimony. The jury did so. Direct appeal counsel wisely did not include this issue in the appellate briefing because it was extremely weak. *See Miller*, 882 F.2d at 1434 ("[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence . . . and have caused her

client no prejudice . . . for the same reason—because she declined to raise a weak issue.").

Therefore, *Martinez* does not excuse the procedural default of Sub-Claim 1(B).

**C.    *Sub-Claim 1(C): Failure of Direct Appeal Counsel to Raise Ineffective Assistance of Trial Counsel Based on Chain of Custody Issue***

Petitioner argues that his trial counsel unreasonably waived, "without consultation, the prosecutor's obligation[] of establishing the chain of custody" for some of the evidence against Petitioner. (Dkt. 3 at 13-14.) He states that direct appeal counsel performed deficiently by failing to raise on appeal the issue of trial counsel's alleged ineffectiveness with respect to this chain of custody.

However, Petitioner has not shown that a claim of ineffective assistance of trial counsel based on the chain of custody issue was appropriate to raise on direct appeal in Idaho. The Idaho Supreme Court routinely declines to hear ineffective assistance claims on direct appeal, stating that such claims almost always require further development of the record, including an evidentiary hearing—which is available in the post-conviction review setting but not on direct appeal. *See Matthews*, 839 P.2d at 1220. This procedure is beneficial to criminal defendants because, as the Idaho Court of Appeals has recognized, a ruling on an IAC claim on direct appeal would preclude the defendant from raising that same claim in a later postconviction proceeding, where the claim could otherwise be developed by way of an evidentiary hearing. *State v. Santana*, 14 P.3d 378, 387 (Idaho Ct. App. 2000).

**MEMORANDUM DECISION AND ORDER  19**

Considering the Idaho appellate courts' position that ineffective assistance of counsel claims are best brought in a postconviction action, Petitioner's claim that direct appeal counsel should have raised the IAC claim regarding the chain of custody is without merit. *Martinez*, 132 S. Ct. at 1319.

### D. Sub-Claim 1(D): Failure of Direct Appeal Counsel to Argue That the Evidence Was Insufficient to Convict

Petitioner claims that direct appeal counsel should have argued on appeal that the evidence was insufficient to convict. (Dkt. 3 at 14-15.) To succeed on an insufficiency of the evidence argument, Petitioner's direct appeal counsel would have had to convince the appellate court that no rational juror would have found Petitioner guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that evidence is sufficient to sustain a conviction if "any rational factfinder could have concluded beyond a reasonable doubt" that the defendant committed the crime). Further, when a court is considering a challenge to the sufficiency of the evidence, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id*.

Petitioner's argument of insufficient evidence is based on the inconsistency in Rojas's testimony with respect to whether he actually saw the drug transaction between Petitioner and Flores. However, as the Court has previously explained, this inconsistency was fully explored by Petitioner's trial counsel, and the jury resolved the inconsistencies in favor of the State. *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1993) ("[I]f the historical facts would support conflicting inferences, the federal court 'must

presume—even if it does not affirmatively appear in the record—that the trier of fact

resolved any such conflict in favor of the prosecution, and must defer to that resolution.'"

(quoting *Jackson*, 443 U.S. at 326). Petitioner has simply not shown any merit to his

argument that direct appeal counsel performed deficiently, or caused him any prejudice,

by failing to raise the issue of the sufficiency of the evidence.

E. *Sub-Claim 1(E): Failure of Direct Appeal Counsel to Challenge the
Racial Composition of the Jury*

Petitioner contends that direct appeal counsel was constitutionally ineffective for

failing to challenge on appeal the racial composition of the jury. Under *Batson v.*

*Kentucky*, 476 U.S. 79, 97 (1986), if a defendant makes out a prima facie case for

discrimination in jury selection, the burden shifts to the state to come forward with a race-

neutral explanation for the peremptory challenge.

During voir dire, trial counsel objected after the prosecutor used a peremptory

challenge to exclude a prospective juror and arguing that the exclusion of the juror was

based on race in violation of *Batson*. (State's Lodging A-3 at 11-12.) Trial counsel

established a prima facie case by pointing out that the excluded juror had a Hispanic name

and was likely Hispanic. (State's Lodging A-3 at 11-12.)

When the judge asked the prosecutor to provide his reasons for striking the

prospective juror, the prosecutor stated that the venire-person's body language was closed

off—that he had his arms folded "almost the entire time that the state asked questions."

(*Id.* at 12.) The prosecutor also noted that the venire-member made a statement that

"sometimes the state was overreaching" and that this statement, combined with his body language, convinced the prosecutor that "he was not a good juror for us, and so we struck him." (*Id*. at 12-13.) The trial court found that this was a race-neutral explanation and that the prosecution had not violated *Batson*.

Petitioner has not shown that jurists of reason could debate whether his direct appeal counsel was ineffective for choosing not to raise the *Batson* issue. Petitioner points to nothing in the record that would have supported such a claim on appeal. The trial judge found that the prosecutor's explanation was race-neutral, and "it is widely acknowledged that the trial judge is in the best position to evaluate the credibility of the prosecutor's proffered justifications" for striking a potential juror. *Briggs v. Grounds*, 682 F.3d 1165, 1171 (9th Cir. 2012). There is no question that Petitioner's direct appeal counsel "remained above an objective standard of competence," and caused Petitioner no prejudice, because direct appeal counsel merely "declined to raise [the] weak issue" of racial discrimination during jury selection. *Miller*, 882 F.2d at 1434. Therefore, this IAC claim is insubstantial.

## CONCLUSION

For the foregoing reasons, the Court concludes that the procedural default of Petitioner's claims of ineffective assistance of direct appeal counsel is not excused under *Martinez*. Therefore, this action will be dismissed with prejudice.

# ORDER

**IT IS ORDERED:**

1.     Petitioner's Motion to Strike the Notice of Appeal So That Jurisdiction Is
       Properly Before This Court (Dkt. 71) is MOOT, because the Ninth Circuit
       has already dismissed Petitioner's appeal following this Court's vacatur of
       its earlier dismissal order and judgment.

2.     Petitioner's Motion Allowing Petitioner To Proceed Under *Martinez v.*
       *Ryan* (Dkt. 72) is DENIED.

3.     This entire action is DISMISSED with prejudice.

4.     The Court does not find its resolution of this habeas matter to be reasonably
       debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.
       § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner
       wishes to appeal, he must file a timely notice of appeal with the Clerk of
       Court. Petitioner may seek a certificate of appealability from the Ninth
       Circuit by filing a request in that court.

DATED: **September 15, 2014**

_____
Honorable Candy W. Dale
United States Magistrate Judge